UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH KELLEY #729470,　　　　　　　　Case No. 2:21-cv-00027

　　　　　Plaintiff,　　　　　　　　　　　　　Hon. Robert J. Jonker
　　　　　　　　　　　　　　　　　　　　　　　Chief U.S. District Judge
v.

AMY MACDOWELL, et al.,

　　　　　Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Ford's motion for partial summary judgment, in which he argues that Plaintiff failed to exhaust his May 24, 2020, retaliation claim. (ECF No. 21.)

Plaintiff state prisoner Kelley filed an unverified complaint pursuant to 42 U.S.C. § 1983. He alleged that CO Ford violated his Eighth Amendment rights during a shakedown and then filed a retaliatory disciplinary report (not a misconduct ticket) against him, in violation of the First Amendment. (ECF No. 1.) Kelley alleges that these violations, which took place on May 23 and 24, 2020, were triggered by a not guilty finding on a misconduct ticket Ford issued to Kelley on May 7, 2020. Kelley was found not guilty on that misconduct ticket on May 12, 2020. Kelley says that, on May 23, 2020, CO Ford "sexually assaulted me by hitting my testicles really hard, and then hitting my penis." (*Id.*, PageID.2.) Kelley filed a Prison Rape Elimination

Act (PREA) grievance against CO Ford.  (*Id.*, PageID.4.)  Kelley says that after CO Ford learned about the PREA grievance, Ford retaliated again by issuing a "30 day condition disciplinary ticket" on May 24, 2020.  (*Id.*, PageID.5.)  Kelley says that he was found not guilty of the allegations in that ticket.  (*Id.*)

Kelley wrote the following in his complaint:

> Regards to the PREA. C/o ford then retaliated against again by writing me a 30 day condition disciplinary ticket on May 24,2020 immediatley after finding out about the PREA and Grievance I put in Against him. The ticket that c/o ford wrote me on May 24,2020 was also overturned when I was found not Guilty. Everything c/o ford mentioned has been documented and is on video footage (see atatchments)

(*Id.*)

The undersigned presumes that the "30 day condition disciplinary ticket" Kelley discusses is an MDOC Prisoner Program and Work Assignment Evaluation, Form CSJ-363.  (*See* ECF No. 24-3, PageID.175 (CSJ-363 issued by CO Ford to Kelley on May 24, 2020).)  To add a touch of confusion to the case, Defendant repeatedly indicates that Ford issued Kelley a misconduct ticket rather than a CSJ-363.

On March 1, 2020, the Court issued a screening opinion dismissing claims against Defendant Nurse MacDowell, and the retaliation claim asserted against CO Ford that allegedly occurred on May 23, 2020.  (ECF No. 4.)  As a result, the two remaining claims against CO Ford are: (1) an excessive force claim arising under the Eighth Amendment based on conduct on May 23, 2020, and (2) a First Amendment

retaliation claim based on the issuance of the "30 day condition disciplinary ticket" on May 24, 2020.  (*Id.*, PageID.61.)

In his motion for summary judgment, CO Ford concedes that Kelley exhausted his Eighth Amendment claim (ECF No. 22, PageID.126), but moves for dismissal of Kelley's retaliation claim based on the issuance of the "30 day condition disciplinary ticket" on May 24, 2020.  CO Ford argues that Kelley failed to exhaust this claim because his grievance was rejected due to Kelley's failure to attempt to first resolve this issue with CO Ford.  Ford asserts that Kelley chose to talk to his supervisor rather than directly to Ford.  (ECF No. 22, PageID.126-27.)  Kelley states in his response that he satisfied the prison policy by first attempting to resolve the matter with his kitchen supervisor and that CO Ford purposely made himself unavailable.  Accordingly, he argues that the rejection was improper.

The undersigned respectfully recommends that this Court grant CO Ford's partial motion for summary judgment.  If the Court adopts this recommendation, only Kelley's Eighth Amendment claim will remain in the case.

**II.  Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

7

filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

9

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

**IV. Analysis**

CO Ford concedes that Kelley exhausted his Eighth Amendment claim relating to the May 23, 2020 shakedown by filing a PREA grievance. (ECF No. 22, PageID.126.)

With regard to Kelley's retaliation claim, the record contains a Prisoner Program and Work Assignment Evaluation form, CSJ-363, issued by CO Ford to Kelley on May 24, 2020. (ECF No. 24-3, PageID.154.) Kelley's grievance URF-20-05-1478-28i pertains to that form. (*Id.*, PageID.152.)

CO Ford argues that Kelley had to file a grievance to properly exhaust his retaliation claim. (ECF No. 27, PageID.183.) The record before the Court indicates that Kelley did not do so. Grievance URF-20-05-1478-28i shows that Kelley failed to

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

resolve this matter with Ford prior to filing his grievance. The Step I grievance form submitted by Kelley states, in relevant part, the following:

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I: 5-28-20  Grievance Identifier: URF|2005|1|4718|28I
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | Kenneth Kelley | 729470 | URF | H-2-50 | 5-24-20 | 5-27-20 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? Yes I
> If none, explain why. **talked to my Food Service Supervisor Ms Roe as she was the Staff Personal that expected my work area before I checked out C/O Ford is not my Supervisor** I completed my work assignment and was Cleared by F/S/ Roe
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On 05/23/2020 I became a victim of Staff on Prisoner Misconduct Since C/O Ford was informed by nurse Amy macDowell heads up C/O Ford On 05/24/2020 C/O Ford continues to harrass and targets me C/O Ford carries out an act of retaliation against me for reporting his misconduct Which is in direct violation of PD 02 02 10 as is (retaliation) against me is Unprofessional Work Conduct set forth in OP 03 03 105 After being cleared of my work area duties by F/S Roe, C/O Ford created a false claim that I left my work assignment and returned to my unit without cleaning my work area And wrote this Grievant a 30 day conditional seeking to get me terminated from my F/S Work Assignment **In Relief C/O Ford's actions should be reported to URF's Inspector Miller to be handled in accordance to PD 01 01 140** I am fearful that C/O Ford will create further acts and conspire with other Staff Personal against me not only to terminate me from my F/S assignment alone Grievant seeks that his 30 day conditional be removed
>
> Grievant's Signature: Kenneth Kelley

(ECF No. 22-3, PageID.152.)

The Step I response rejecting the grievance states the following:

11

> DATE: Thursday, May 28, 2020
>
> TO: KELLEY KENNET    729470    LOCATION: URF   H   250
>
> FROM: M. McLean, Grievance Coordinator
>
> SUBJECT: Rejection
>
> Your Step I grievance regarding **Grievance Rejections**
> was received in this office on **05/28/20** and was rejected due to the following reason:
>
> Your grievance is being rejected for the reason that you are in violation of PD 03.02.130. This procedure states that you must attempt to resolve the issue with the staff member involved prior to filing a grievance. If, after you attempt to resolve this issue with the staff member involved, and the issue is not resolved you may resubmit this issue on a new step I form. If you do wish to resubmit this issue it must still be within the time limits prescribed in OP 03.02.130.
>
> Any future references to this grievance should utilize this identifier:
>
> URF — 20— 05 —    1478    — 28 I

(ECF No. 22-3, PageID.153.)

Kelley disagreed with this decision and appealed at Step II. His Step II appeal is shown below.

> Name (Print first, last): Kenneth Kelley | Number: 729470 | Institution: URF | Lock Number: H-2-50 | Date of Incident: 5/24/20 | Today's Date: 6/8/20
>
> **STEP II — Reason for Appeal:** Grievant is NOT SATISIFIED with STEP I response. Grievant did talk to his Food Service Supervisor Ms. Roe, Whom informed C/O Ford. C/O Ford never corrected this 30 day Conditional written on 6/24/2020. Grievant has to seek relief through this Grievance Prosess. C/O Ford Never Corrected this error Concerning the 30 days.

(ECF No. 22-3, PageID.150.)

The MDOC upheld the Step I rejection (*id.*, PageID.151), and Kelley again appealed. His Step III appeal is shown below.

> **STEP III — Reason for Appeal**
> Grievant sought to resolve this matter at StepI And Step II C/O Ford never took responsibility for his action(s). Grievant is not satisfied with either Step I and Step II's response. Grievant has no other recourse other then to proceed with Step III. Step III is being submitted.

(*Id.*, PageID.150.)

12

In its decision at Step III, the MDOC again upheld the Step I rejection. (*Id.*, PageID.149.)

Based on this record, Kelley did not comply with the MDOC procedures and failed to exhaust his administrative remedies.

In his response to Ford's motion for summary judgment, Kelley raises a new argument. He says that Ford purposely avoided him, thus making it impossible to comply with the MDOC policy requiring a prisoner to attempt to resolve a matter with the staff prior to filing a grievance. (ECF No. 24, PageID.163.)

In the undersigned's view, this argument does not create a genuine issue of material fact for three reasons. First, Kelley raised this argument in his response brief, but failed to include it in a declaration or affidavit, as required by Fed. R. Civ. P. 56(c)(4). Second, Kelley's response brief does not meet the requirements of 28 U.S.C. § 1746. Thus, the brief itself does not qualify as a declaration or affidavit. And third, this argument, which Kelley raises for the first time in his response brief, is inconsistent with the arguments he offered in his Step II and III appeals.

### V. Recommendation

The undersigned respectfully recommends that this Court grant CO Ford's partial motion for summary judgment. If the Court adopts this recommendation, only Kelley's Eighth Amendment claim will remain in the case.

Dated:  November 8, 2021                    /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).