UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH KELLEY #729470,                         Case No. 2:21-cv-00027

                    Plaintiff,                  Hon. Robert J. Jonker
                                                U.S. District Judge
          v.

UNKNOWN FORD,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses summary judgment motions filed by Plaintiff (ECF Nos. 50, 51) and Defendant Ford (ECF No. 52).

The Plaintiff in this case – state prisoner Kenneth Kelley – filed this civil rights action pursuant to 42 U.S.C. § 1983.   Kelley's remaining claim is an excessive force claim against Corrections Officer (CO) Ford.   Kelley's unverified complaint alleges that his rights were violated while he was confined at the Chippewa Correctional Facility (URF) when CO Ford struck him in the genitals while conducting two shakedowns (pat-down searches).[1]   (ECF No. 1.)

---

[1]    In addition to requesting six million dollars in compensatory and punitive damages, Ford requested a transfer to a different prison facility.   (ECF No. 1, PageID.3.)   Ford has since been transferred from URF and is currently housed at the Bellamy Creek Correctional Facility.   Ford's request for a transfer to a prison other than URF is moot.

In a screening opinion and order issued on March 1, 2021, the Court dismissed the other named Defendant – Registered Nurse MacDowell – and one of Kelley's First Amendment retaliation claims.  (ECF Nos. 4 and 5.)   On December 30, 2021, the Court granted CO Ford's partial motion for summary judgment on the remaining retaliation claim based upon Kelley's failure to exhaust his administrative remedies.  (ECF No. 38.)   Thus the sole remaining issue is Kelley's assertion that CO Ford assaulted him while conducting two shakedowns on May 23, 2020.

CO Ford filed a motion for summary judgment and attached the video of the shakedowns to his motion.[2]   (ECF Nos. 52 and 53.)   CO Ford asserts that he conducted the pat-down searches using minimal force and that he did not make purposeful contact with Kelley's groin area.   Kelley has also filed a motion for summary judgment.[3]   (ECF Nos. 50 and 51.)   Kelley asserts that the video evidence and witness testimony support his Eighth Amendment claims.

The video depicts two minimally intrusive, routine pat-down searches.   The record contains no evidence that could support Kelley's claim that CO Ford violated Kelley's Eighth Amendment rights.

It is respectfully recommended that the Court grant Defendant Ford's motion for summary judgment and deny Plaintiff Kelley's motions for summary judgment.

---

[2]      Kelley was provided the opportunity to view the video and has viewed the video two times.   (ECF No. 53-10, PageID.340.)

[3]      There are two copies of Kelley's motion for summary judgment filed in the record.   (ECF Nos. 50 and 51.)   They are identical.

## II.   Factual Allegations

Kelley alleges that during a May 23, 2020, shakedown CO Ford sexually assaulted him by striking him in the genitals.   (ECF No. 1, PageID.2.)   Kelley says that this caused him to experience psychological issues, including the inability to sleep and eat.   (*Id.*)

Kelley says that when he was leaving his kitchen job to get his daily medication, CO Ford conducted a shakedown.   (*Id.*, PageID.4.)   Kelley says that CO Ford hit him in the testicles and then ordered a second shakedown.   (*Id.*)   CO Ford ordered Kelley to remove his kitchen uniform, pull up his shirt, and pull down his pants.   (*Id.*)   Kelley says that CO Ford assaulted him in the groin area a second time.   (*Id.*)

Kelley wrote a Prison Rape Elimination Act (PREA) grievance and sought medical attention due to the pain.   (*Id.*)   Kelley says that he was harassed by the nurse, other staff members, and prisoners due to this incident.   (*Id.*, PageID.5.) Kelley says that CO Ford and the nurse humiliated him, and that video evidence exists to support his claims.   (*Id.*)

## III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.    Eighth Amendment – Excessive Force

Kelley's allegations raise issues of sexual abuse and cruel and unusual punishment.   Kelley's claims implicate the Eighth Amendment.   *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005) (Allegations of "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment.")   The Eighth Amendment limits the power of the states to punish those convicted of a crime.   Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."   *Id*. at 346.   Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification."   *Id*.

4

To establish an Eighth Amendment claim, Plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298).

Under the subjective component, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). The Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

Under the objective component, the pain inflicted must be "sufficiently serious." *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298). The Court's inquiry regarding the seriousness of the injury is "contextual" and is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8–9. While the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred.

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).   When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident."   *Hudson*, 503 U.S. at 9.

To establish a genuine issue of material fact regarding the **<u>objective component</u>** of this claim, Kelley would need to establish that the pain he suffered was "sufficiently serious."   *Williams*, 631 F.3d at 383.   Although the Court's inquiry regarding the seriousness of Kelley's injuries is contextual and the seriousness is not dispositive of his claim, the seriousness of the injuries reflects the amount of force that Kelley was subjected to during the pat-down searches.

Here, as a starting point, the medical evidence establishes that Kelley suffered no visible injuries and was able to ambulate and sit without issue.   (ECF No. 53-11.) Kelley was instructed to use a warm compress and given 3 packets of Tylenol and 3 packets of Ibuprofen.   (*Id.*)

But the more important piece of evidence before the Court is the video recording showing the two pat-down searches.   The video shows a fixed camera angle from inside the chow hall and another fixed camera angle from outside the chow hall. The video does not have sound.   The video does not show that Kelley sustained any injury or that the CO Ford used excessive force.   The video confirms CO Ford's version of the event that only minimal and, at most, *de minimis* force was used to accomplish the pat-down search.   Kelley was wearing a mask over his face, so the video does not reveal whether he flinched.

During the first search, which took place inside the chow hall, Kelley was facing away from Ford and the camera. The video shows that CO Ford conducted a minimally invasive search that lasted approximately four seconds.

The second search occurred outside the chow hall. The video again shows a brief, minimally invasive search. Nothing in the video depicts any injury to Kelley, and, more importantly, there exists no evidence of a serious injury.

Kelley failed to submit credible evidence, medical or otherwise, showing that he suffered an injury from the alleged excessive force. Kelley has submitted the declaration of prisoner John Nunnally who states that he witnessed the pat-down search. (ECF No. 50-1, PageID.270; ECF No. 51-1, PageID.278.) Prisoner Nunnally attests that he observed Kelley flinch when CO Ford first "was in the groin area" and "again saw C/O Ford came up to Kelley's groin area again I also saw Kelley jerk again." (*Id*.) Prisoner Nunnally does not provide any observation that could raise an issue of fact that Kelley sustained a serious injury. Without the benefit of verifying evidence regarding an injury and the cause of the injury, Kelley has failed to show a genuine issue of material fact regarding the seriousness of his injuries.

Despite Kelley's failure to establish a genuine issue of fact regarding the seriousness of his injuries, Kelley may still assert viable Eighth Amendment excessive force claims if he can show that Defendant applied force maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 9.

The **subjective component** is satisfied when Defendant applies force "maliciously and sadistically to cause harm." *Id*. at 5-6. To conclude whether

Defendants' applied force maliciously and sadistically, the undersigned analyzes the reasonableness of Defendants' use of force.  *Id*. at 6-7.  And reasonableness is determined by (1) the relationship between that need and the amount of force used, (2) the threat "reasonably perceived by the responsible officials," and (3) any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 6-7.

CO Ford was working as a food service officer on May 23, 2020.   (ECF No. 53-5 (Affidavit of Ford).)   His duties included conducting a pat-down search of every prisoner food service worker before they left the chow hall.   (*Id*.)   CO Ford conducted a routine pat-down search of Kelley when he was leaving the chow hall.   (*Id*.)   CO Ford thought he detected something that could be contraband on Kelley during his first pat-down search.   (*Id*.)   CO Ford ordered Kelley to come with him outside the chow hall and had Kelley remove his coveralls.   (*Id*.)   CO Ford conducted a second pat-down search before he determined that Kelley did not have contraband.   (*Id*.)

Kelley's PREA grievance asserting sexual abuse was investigated and the investigation found insufficient evidence to support Kelley's abuse claim:

**CONCLUSION:  Corrections Officer M. Ford**

Based on all available information and review of the facility video, there is not enough evidence to support Prisoner Kelley's allegation of Sexual Abuse. The facility video appears to show the officer performing a routine pat-down search and with the facility video having no audio, there is inconclusive evidence to prove what type of verbal exchange may have accrued between the officer and the prisoner. Therefore, there is Insufficient Evidence to support Prisoner Kelley's allegation of Sexual Abuse.

Regarding the **Work Rule Violations**, the investigation has determined the following:

**Allegation(s):**

| #51  Sexual Conduct with Offender | Insufficient Evidence |
|---|---|

**DISPOSITION:**

This investigation is closed and available for review by the MDOC administration.

(ECF No. 53-12, PageID.349.)

The video evidence establishes that CO Ford conducted two routine minimally invasive pat-down searches.    At most, CO Ford used *de minimis* force.    *See Booth v. Botos*, 2:05-cv-240, 2005 WL 2355534, * 3 (W.D. Mich. June 5, 2008) (Allegation that prison guard struck prisoner in groin area causing pain during pat-down search failed to rise to level of a constitutional violation because the alleged conduct was *de minimis*).   The video evidence does not even come close to establishing that excessive force was used by CO Ford during the pat-down search.    *See Scott v. Harris*, 550 U.S. 372, 380-381 (2007) (noting that a court should "view[] the facts in the light depicted by the videotape").

There is no doubt that Kelley was agitated by the second search because, despite CO Ford's initial concerns, Kelley was not attempting to steal anything from the chow hall.   Under these circumstances Kelley was justified in being frustrated,

9

but that justification does not extend to filing a lawsuit based upon excessive force after he was exposed to only routine, minimally invasive pat-down searches.

Kelley has presented no facts or evidence that even arguably supports his claim of excessive force or that CO Ford acted maliciously and sadistically to cause harm. All the evidence points to the clear conclusion that there exists no genuine issue of material fact to support an Eighth Amendment claim.

## V.   Qualified Immunity

Alternatively, Ford moves for qualified immunity from liability.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).   First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).   Second, the court asks if the right at issue was "'clearly established' when the event occurred such

10

that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances

11

before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the opinion of the undersigned, CO Ford is entitled to qualified immunity because, based on the evidence before the Court, the pat-down searches were conducted using only the minimal amount of force necessary to search for contraband.

## VI. Recommendation

It is respectfully recommended that the Court grant Defendant Ford's motion for summary judgment and deny Plaintiff Kelley's motions for summary judgment.

If the Court accepts this recommendation, this case will be dismissed.

Dated:    December 29, 2022                    /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).